UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIDI GROSSMAN LEPP,
                    Plaintiff,

v.

CONRAD MALLET, JR., AND
JOHN DOES 1-500
                    Defendants.

_____/

Case No. 25-10214

Judith E. Levy
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND (ECF No. 20) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR COUNSEL (ECF No. 24)

Plaintiff Heidi Grossman Lepp filed a motion to amend her original complaint on May 1, 2025. (ECF No. 20). On May 15, 2025, Defendant Conrad Mallet, Jr.—the only Defendant to be served thus far—filed a response in opposition urging the Court to deny Plaintiff's motion. (ECF No. 22). Plaintiff filed her reply brief on May 20, 2025. (ECF No. 23). Having reviewed the briefing, the motion to amend is **DENIED**.

## I.    BACKGROUND[1]

---

[1] Considering the undersigned described the facts alleged in Plaintiff's original complaint in the Report and Recommendation filed concurrently with this Order (and elsewhere, *see* ECF No. 15), the Court will only elaborate upon the allegations in Plaintiff's proposed amended complaint.

Alongside Defendant Mallet and John Does 1-500, Plaintiff's proposed amended complaint adds six new Defendants: Peggy Kathleen Madden, in her individual and official capacities; Inspector Daniel Black, in his individual capacity; Inspector Green, in his individual capacity; Sgt. Barrack in his individual capacity; Woodward Building Plaza, Inc.; and the City of Detroit.[2]  (ECF No. 20-1, PageID.217-18, ¶¶ 50-55; ECF No. 23, PageID.343).  Plaintiff also removes her official capacity claims against Mallet and sues him in his individual capacity only. (*Id.* at PageID.217, ¶ 49).

Plaintiff alleges that the Sugarleaf Church, also known as "The Mothership Sanctuary," ("the Church") leased property at 2627 John R. Street, Detroit MI on October 9, 2024.  (ECF No. 20-1, PageID.219, ¶ 58).  That said, the copy of the lease affixed to the proposed amended complaint indicates that the lessor, Woodward Building Plaza LLC, leased the John R. Street property to "Mothership Consulting and Events LLC" for a term of one month, from November 1, 2024 to December 1, 2024.[3]  (ECF No. 20-2, PageID.260).  At the end of that term, the

---

[2] The first page of Plaintiff's motion suggests that she is also adding the Detroit Police Department ("DPD") as a Defendant.  (ECF No. 20, PageID.211).  But Plaintiff does not list the DPD as a Defendant when identifying the parties nor did she include the DPD when listing the Defendant's in her response brief.  (ECF No. 23, PageID.343).  As such, the Court does not read Plaintiff's motion as adding the DPD as a Defendant to this case.

[3] Though Plaintiff alleges that the lease was signed on October 9, 2024, the lease was signed before then considering the lease was notarized on September 27, 2024.  (ECF No. 20-2, PageID.269).

lease would then become a month-to-month lease.  (*Id.*).  Plaintiff broadly claims that Defendants "engaged in a coordinated campaign of harassment . . . causing irreparable harm to Plaintiff's religious exercise and members' safety."  (ECF No. 20-1, PageID.219, ¶ 60).

Proceeding chronologically, the opening chapter to the events in this lawsuit occurred in September 2024 when Detroit police officers raided The Psychedelic Healing Shack ("the Shack") in September 2024 after its owner, Mr. Robert Pizzimenti, reportedly sold mushrooms to an undercover Detroit police officer.[4] (ECF No. 20-1, PageID.219, ¶ 61; ECF No. 20-2, PageID.245-51).  Allegedly Defendants Mallet, Black, and Does 1-10 as well as non-parties Tamara Young Cook and Sgt. Kelly Larson "directed" this raid.  (ECF No. 20-1, PageID.219, ¶ 61).  Mr. Pizzimenti joined the Church after this raid.  (ECF No. 20-1, PageID.219, ¶ 61; ECF No. 20-2, PageID.245-51).

Next, Defendant Peggy Kathleen Madden emailed Plaintiff on October 24, 2024 denying the lessee's ability to occupy the John R. Street property "without prior authorization and licensing from the City of Detroit for [its] proposed use of the property."  (ECF No. 20-1, PageID.220, ¶ 64; ECF No. 20-2, PageID.274).  Madden did so since it "appear[ed] as though [Plaintiff] promote[s] the commercial

---

[4] Plaintiff alleged that the raid occurred in September 2023 when it actually occurred in September 2024.  (ECF No. 20-2, PageID.245-51).

sale and possible cultivation of hallucinogens for religious purposes."  (ECF No. 20-1, PageID.220, ¶ 64; ECF No. 20-2, PageID.274).  Madden explained that she could not allow her client "to be subjected to possible civil and criminal charges" by allowing the lessee to take occupancy.  (ECF No. 20-2, PageID.274).  Plaintiff claims that Madden's reference to civil and criminal liability was a threat directed at the Church thereby violating the federal Religious Land Use and Industrialized Persons Act ("RLUIPA") and Michigan's Elliott-Larsen Civil Rights Act.  (ECF No. 20-1, PageID.220, ¶ 65).

Plaintiff also alleges that Madden represented Woodward Building Plaza, Inc.  (*Id.* at ¶ 64).  Madden's email, however, conveyed that she was the attorney for Russell Industrial Center and Boydell Development Company, Inc.  (ECF No. 20-2, PageID.274).  This suggests that Madden's client must have some relationship with Woodward Building Plaza, the lessor of the John R. Street property, but the precise nature of that relationship is unclear.  Additionally, Plaintiff claims that Madden is the "Assistant City Attorney/Prosecuting Attorney for River Rouge."  (ECF No. 20-1, PageID.221, ¶ 66).  In turn, Plaintiff claims that Madden's dual employment constitutes a conflict of interest in violation of state law and ethics rules.  (*Id.*).

In November, Plaintiff sent a letter asserting the Church's legal status to non-party Tamara Young Cook.  (ECF No. 20-1, PageID.219, ¶ 61; ECF No. 20-2,

PageID.232-35).  Plaintiff felt compelled to do so because of the September 2024 raid at the Shack and Mr. Pizzimenti's subsequent Church membership.  (ECF No. 20-1, PageID.219, ¶ 61; ECF No. 20-2, PageID.245-51).

On December 3, 2024, Defendant Mallet made allegedly unlawful comments in a Detroit Metro Times article.  (ECF No. 20-1, PageID.220, ¶ 62).  In full, the relevant part of the article is as follows:

> "It is against the law to sell marijuana without a license," Mallet said.  "It is against the law to sell psychedelic mushrooms.  Like others before him Mr. Pizzimenti is trying to hide behind the church and mask criminal behavior.  The City of Detroit has confronted others making similar claims.  In each case the city of Detroit was able to prove behavior was illegal.  If Mr. Pizzimenti persists, he will be prosecuted to the full extent of the law."

(ECF No. 20-2, PageID.246).  Plaintiff alleges that Mallet's comments were defamatory and "caused the police to retaliate and harass us, lost donations, reputational harm, and emotional distress, exacerbating Plaintiff's PTSD."  (ECF No. 20-1, PageID.220, ¶ 62).

On January 15, 2025, Defendant Inspector Daniel Black, an employee of Detroit's Buildings, Safety Engineering, and Environmental Department ("BSEED"), allegedly performed a "warrantless inspection" at the John R. Street property, "falsely claiming an 'occupancy issue' despite minimal occupancy." (ECF No. 20-1, PageID.221, ¶ 24).  And on March 12, 2025, Plaintiff claims that Defendant Black—along with John Does 2, 3, and 4, "raided [the] Psychedelic

Healing Shack, ordering closure and placing red tags." (*Id.* at ¶ 75). Such conduct, Plaintiff says, "chill[ed] religious exercise." (*Id.*).

Plaintiff claims that Defendant Inspector Green, another BSEED employee, also participated in the alleged harassment scheme. According to Plaintiff, the lease for the John R. Street property included an implied license to use an adjacent parking lot on Adelaide Street. (*Id.* at ¶¶ 68-69). Allegedly Nico, a "Boydell employee" also gave Plaintiff a parking pass and verbal permission to use the Adelaide Street parking lot. (*Id.* at ¶ 68). Plaintiff alleges that Defendant Inspector Green photographed and surveilled the Adelaide Street lot on March 12, 2025. (*Id.* at PageID.221, ¶ 70). Ultimately, however, Woodward Building Plaza, Inc., "via Madden, issued a notice prohibiting parking" at that lot after March 19, 2025. (*Id.*). In support of this claim, Plaintiff refers to a notice from "Boydell Development" indicating that "[a]s of 3/12/25 everyone that parks in this lot after 7 days from today . . . will be <u>towed by the city at the owner's expense</u>." (ECF No. 20-2, PageID.276). In addition, Defendant Green allegedly "conducted another warrantless inspection, photographing sacred spaces without consent" on March 15, 2025. (ECF No. 20-1, PageID.221, ¶ 76). Presumably, this second warrantless inspection also occurred at the John R. Street property.

Around the same time as Green and Black's alleged unlawful conduct in March 2025, Defendant Sgt. Barrack, a Detroit police officer, ordered "officers to

trespass at 227 Adelaide Street" who "photograph[ed] sacred spaces without consent." (*Id.* at ¶ 78). Plaintiff claims that these trespasses exacerbated Plaintiff's PTSD and instilled fear. (*Id.* at ¶ 79). Plaintiff does not state whether any of these officers are part of the 500 John Doe Defendants.

Plaintiff also claims that Detroit police officers, John Does 1 and 2, "stole Church signage, issued parking tickets, and falsely claimed City ownership [of the Adelaide Street lot, presumably] on April 15, 2025" in violation of municipal ordinances and state law. (ECF No. 20-1, PageID.221, ¶ 71; ECF No. 20-2, PageID.287-92). These actions, in turn, disrupted the Church's April 19-20 holiday "causing lost donations." (ECF No. 20-1, PageID.221, ¶ 72). And Plaintiff alleges that the actions of Does 1 and 2 "den[ied] disabled members access" in violation of the Americans with Disabilities Act. (*Id.* at ¶ 72).

Plaintiff also refers to alleged unlawful conduct on part of "Defendants" writ large. She claims that Defendants—without specifying who—raided the Shack, "Spores Hazel Park, Soul Tribes International Ministries, and The Mush Room" between November 2024 and March 2025. (*Id.* at PageID.222, ¶ 81). Defendant Madden also purportedly took unlawful actions against Spirit Keepers Native American Church in her capacity as the Assistant City Attorney for River Rouge and in a manner consistent with her "discrimination against Sugarleaf Church." (*Id.* at ¶ 83). According to Plaintiff, these actions "reflect a pattern of Michigan

municipalities prioritizing commercial development and religious discrimination over religious use" in violation of the First Amendment and RLUIPA. (*Id.* at ¶ 87). To that end, Plaintiff claims that the City of Detroit's actions were unlawful. (*Id.* at 88).

Furthermore, Plaintiff alleges that Defendants' actions harmed the Church's members by "severing spiritual ties, restrict[ing] access, and [causing] emotional distress." (*Id.* at ¶ 85). She also claims that the Church suffered economic harms in the form of potential revenue loss. (*Id.* at PageID.223, ¶ 90). In detailing those economic harms, Plaintiff refers to another church's apparent annual revenue and suggests that the revenue this other church generates is a model for her Church's losses. (*Id.* at ¶ 991). Plaintiff also asserts that the City of Detroit's defense of Defendant Mallet in this case harms her and the public generally by misappropriating taxpayer resources. (*Id.* at ¶¶ 93-94).

Based on the above factual allegations, Plaintiff brings nineteen claims in her proposed amended complaint. Plaintiff raises six claims under 42 U.S.C. § 1983 for violations of the First Amendment's Free Exercise and Free Speech Clauses, the Fourth Amendment's prohibition of unreasonable searches and seizures, the Fifth Amendment's Takings Clause, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (*Id.* at PageID.223-26 (Counts I-VI)). The proposed amended complaint also includes a municipal

8

liability claim under 42 U.S.C. § 1983. (*Id.* at PageID.227 (Count XVIII)). There is also a civil conspiracy claim under 42 U.S.C. § 1985(3). (*Id.* at PageID.226 (Count XI)). Plaintiff raises claims for violating several federal statutes as well, namely RLUIPA, the Americans with Disabilities Act, the Fair Housing Act, and the Racketeer Influenced and Corrupt Organizations Act. (*Id.* at PageID.225-226 (Counts VII-X and XII)). Additionally, Plaintiff raises a host of state-law claims for defamation, false light, intentional infliction of emotional distress, trespass, conversion, and misappropriation of public funds. (*Id.* at PageID.226-28 (Counts XIII-XVII and XIX)).

## II.    ANALYSIS

Defendant Mallet, as the only Defendant that has been served in this case, opposes Plaintiff's motion and urges the Court to deny it since the proposed amended complaint would be futile. (ECF No. 22, PageID.330). The Court agrees. Plaintiff's motion to amend is **DENIED**.

A.    <u>Governing Standard</u>

As the deadlines for Plaintiff to amend her complaint as a matter of right have passed, Plaintiff must either obtain leave of the Court or Defendant Mallet's written consent to file amended pleadings. Fed. R. Civ. P. 15(a)(1)(2). Leave to amend the complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, this does not suggest that all motions to amend are

automatically granted.  Courts consider several factors when assessing a motion to amend, namely, "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). Amendment of a complaint is futile when the proposed amendment "'cannot withstand a Rule 12(b)(6) motion to dismiss.'"  *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Riverview Health Inst. LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels or conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

10

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 951, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dep't.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J); *see also Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

That said, the Court can also consider the documents attached to the proposed amended complaint. *See Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707

11

(6th Cir. 2021) (citing *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017)).  "When a document contradicts allegations in the complaint, rendering them implausible, the exhibit trumps the allegations." *Id.* (internal quotation omitted).  *See also Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013).  But if the document supports "both parties' version of events," then the facts are viewed in the light most favorable to plaintiff.  *Id.* at 708-09.  *See also Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008).

One final note.  Defendant Mallet largely uses the same futility standard in his response brief.  (ECF No. 22, PageID.330-32).  Even so, he also contends that the proposed amended complaint is futile because Plaintiff lacks standing to bring the claims alleged in the proposed pleadings.  (*Id.* at PageID.333-36).  In other words, Mallet argues that the proposed pleadings are futile because the Court would lack subject-matter jurisdiction over the claims therein.  There is some authority for denying a motion to amend on futility grounds based on the lack of subject-matter jurisdiction under Rule 12(b)(1).  *See Apple Corp. Wellness, Inc. v. Bluecross Blueshield of Tennessee, Inc.*, No. 1:15-cv-324, 2016 WL 5390878, at *4 (E.D. Tenn. Sept. 27, 2016); *Dearborn Fed. Savs. Bank v. Fed. Deposit Ins. Corp.*, No. 13-10833, 2014 WL 320950, at *5 (E.D. Mich. Jan. 29, 2014).  But as courts ordinarily apply a Rule 12(b)(6) standard, the Court will do so here and assess Mallet's standing arguments if necessary.

B.    <u>Discussion</u>

The proposed amended complaint consists of truncated, almost bulleted claims where Plaintiff lists the cause of action, indicates who the claim is brought against with varying degrees of specificity, the alleged harm, and the requested relief.  Though Plaintiff also includes a case citation alongside her claims, she does not explain how that case applies to the respective claim.  Applying a Rule 12(b)(6) analysis, the Court finds that the proposed amended complaint fails to state plausible federal law claims upon which relief can be granted.

As an initial matter, the Court addresses fatal defects in the proposed amended complaint related to the constitutional claims against Defendants Madden and Woodward Building Plaza, Inc.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983).  This means that "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001).  Yet "[a]nyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983." *Filarsky*, 566 U.S. at 383 (quoting *Lugar v.*

13

*Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).  "It is well settled that private

parties that perform fundamentally public functions, or who jointly participate with

a state to engage in concerted activity, are regarded as acting 'under color of state

law' for the purposes of § 1983." *United Pet Supply, Inc. v. City of Chattanooga*,

768 F.3d 464, 21-22 (6th Cir. 2014) (internal quotation omitted); *Bartell v.

Lohiser*, 215 F.3d 550, 556 (6th Cir. 2000).

A private attorney, however, is not a state actor.  *See Hassink v. Mottl*, 47 F.

App'x 753, 7555 (6th Cir. 2002) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318

(1981)); *Krukemyer v. Forcum*, 475 F. App'x 563, 566 (6th Cir. 2012) ("It is well-

settled that a lawyer representing a private client is not a state actor acting 'under

color of state law.'").  Even when a municipality retains private counsel as

representation, the attorney does not become a state actor.  *Blackwell v. Allen*, No.

21-cv-12284, 2022 WL 791408, at *3 (E.D. Mich. Mar. 14, 2022).

Plaintiff's constitutional claims against Madden are based on an email in

which Madden identifies herself as counsel for Russell Industrial Center and

Boydell Company, Inc.  (ECF No. 20-2, PageID.274).  That email appears to have

come from Madden's private account as well.  (*Id.*).  Thus, Plaintiff sues Madden

for her conduct as a private attorney, not a state actor.  Plaintiff's claim that

Madden is also the Assistant City Attorney for the City of River Rouge does not

alter this analysis.  Madden's email does not implicate the authority of her public

office.  Moreover, River Rouge is an entirely different municipality, so she would not have any authority to act in her official capacity in the City of Detroit.  In other words, Madden's email did not "occur[ ] in the course of performing an actual or apparent duty of [her] office" or involve conduct that reflects behavior that necessarily depends on the authority of her office.  *Waters*, 242 F.3d at 359.  Since Madden's email does not implicate state action, Plaintiff fails to state plausible constitutional claims against Madden under 42 U.S.C. § 1983.  Claims against Madden that require state action are therefore futile on that basis alone.

Section 1983's state action requirement also bars any constitutional claims Plaintiff may bring against Woodward Building Plaza, Inc.  First, the proposed amended complaint never expressly links this Defendant to a cause of action.  Indeed, the only factual allegation lodged against Woodward is that it issued a notice prohibiting parking at the Adelaide Street lot.  (ECF No. 20, PageID.221, ¶ 70).  Second, to the extent that Woodward is included by broad references to "Defendants," Woodward is not a state actor—it is a private company.  And Plaintiff has not argued that Woodward falls within an exception to the state action requirement.  Accordingly, Plaintiff fails to state any claim with a state action requirement against Woodward Building Plaza, Inc.[5]

---

[5] If Plaintiff sues Woodward on a theory of vicarious liability based on Madden's conduct, then that would only further emphasize that Madden acted in her private capacity when she sent the October 2024 email.

*Count I: First Amendment—Free Exercise Clause*

Plaintiff claims that Mallet's statement's, Madden's email, Black's inspection, Green's closures, and Does 1-50's trespass "burdened [her] religious exercise without a neutral law, violating Proposal E [e.g., the City of Detroit's ordinance decriminalizing the possession and therapeutic use of entheogenic plants by adults]."[6]

As the Court explained in an earlier Order:

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia*, 539 U.S. 522, 532 (2021).  Under the First Amendment, a law that is "neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).  "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533 (cleaned up).  Nor is a law generally applicable if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 534.  It is also impermissible for a law that appears neutral and generally applicable to target the adherents of a faith and their actions. *Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012) (citing *City of Hialeah*, 508 U.S. at 524-25).

---

[6] Notably, the proposed amended complaint only includes factual allegations for John Does 1-10.  (ECF No. 20-1, PageID.219, PageID.221, ¶¶ 61, 71, 75).  Plaintiff has not alleged factual details elaborating upon the supposed trespass Does 11-50 committed.  Though Plaintiff refers to Exhibit F, her affidavit there does not refer to Does 11-50 or clarify what they did that amounted to a trespass.  (ECF No. 20-2, PageID.275).

(ECF No. 19, PageID.202).

Plaintiff fails to state plausible Free Exercise claims. To prevail, Plaintiff had to allege that each Defendant acted pursuant to some law, statute, or ordinance in a way that burdened her religious exercise. *See Clark v. Stone*, 998 F.3d 287, 304-05 (6th Cir. 2021); *Dad's Place of Bryan, OH v. City of Bryan*, No. 24-3625, 2024 U.S. App. LEXIS 22738, at *8-9 (6th Cir. Sept. 5, 2024). But Plaintiff only alleged that Defendants' actions violated a Detroit ordinance, not that they acted pursuant to that ordinance. While she recites the generic elements of a Free Exercise claim by referring to burdened religious exercise "without a neutral law," Plaintiff identifies no such law or laws. And without identifying the legal authority under which Defendants purportedly acted, Plaintiff cannot state a plausible Free Exercise claim. (*See* ECF No. 19, PageID.202-03 (finding Plaintiff's failure to identify a specific law fatal to Free Exercise claims in her motion for emergency injunctive relief)). *See also Clark*, 998 F.3d at 304-05.

The Exhibits cited under this claim are unavailing. (ECF No. 20-1, PageID.224, ¶ 94 (referring to Exhibits C, E, F, G, and J)). Exhibit C consists of the article containing Mallet's allegedly defamatory statement—this article does not refer to any rule of law under which Mallet acted to burden Plaintiff's religious exercise. (ECF No. 20-2, PageID.244-58). Neither does Exhibit E which consists of Madden's email regarding the lease at the John R. Street property. (*Id.* at

PageID.274). While Exhibit F contains an affidavit from Plaintiff explaining that she has learned of new facts since initially filing her lawsuit, nothing in the affidavit points to the rule of law under which any of the Defendants named here acted. (*Id.* at PageID.275). Exhibit G contains the notice from Boydell Development about the Adelaide Street lot's closure and does not point to the legal authority Defendant Green apparently used to cause such disclosure (despite the notice not naming Green in the first place). (*Id.* at PageID.276). And Exhibit J contains an unsigned, unnotarized affidavit from Mary Anne Hughes, the "Shaman, President, and Founder of Spiritkeepers Native American Church." (ECF No. 20-2, PageID.278-80).[7] In this document, Hughes alleges that Madden discriminated against her church. (*Id.*). Hughes does not, however, identify the rule of law Madden acted under when she sent her October 2024 email.

Without any indication as to the legal authority Defendants Mallet, Madden, Black, Green, and Does 1-50 acted, the Court cannot assess whether they acted pursuant to a neutral law of general applicability. Accordingly, Plaintiff fails to adequately plead her Free Exercise claims, and they are futile.

*Count II: First Amendment—Free Speech Clause*

---

[7] Plaintiff filed a supplemental brief containing a signed, notarized copy of the affidavit. But this filing is improper as it violates this Court's Local Rules. Supplemental briefs may be filed only with leave of the Court, and Plaintiff did not move for such leave. *See* E.D. Mich. LR 7.1(d)(1)(A) ("*Unless the court permits otherwise*, each motion and response to a motion must be accompanied by a single brief.") (emphasis added).

Under Count II, Plaintiff claims that Mallet's statement, Madden's email, and Black's raid "chilled Plaintiff's religious expression" thereby violating the Free Speech Clause of the First Amendment.  "A First Amendment [Free Speech] claim depends on three inquiries: (1) whether speech is protected; (2) 'the nature of the forum' in which the speech occurs; and (3) whether the government's restriction on speech satisfies the relevant forum's associated constitutional standard."  *Hartman v, Thompson*, 931 F.3d 471, 478 (6th Cir. 2019) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). *See also Satawa v. Macomb Cnty. Rd Comm'n*, 689 F.3d 506, 517 (6th Cir. 2012).

Plaintiff has only alleged that Defendants' actions chilled her religious expression.  Plaintiff has not pleaded factual allegations explaining what aspect of her religious expression constituted speech or whether that speech is protected speech.  The proposed amended complaint also lacks factual allegations about the nature of the forum, especially considering how Defendant Mallet's allegedly unlawful conduct occurred at a different time and place than that of both Defendant Madden and Defendant Black.  And Exhibits C and E, which Plaintiff cites under this claim, do not offer any clarity on these issues.  (ECF No. 20-2, PageID.244-58, PageID.274).  Without such factual allegations, the Court cannot perform the requisite forum analysis.  Plaintiff's proposed amended complaint therefore fails to state plausible Free Speech claims.

19

Plaintiff's citation to *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), does not rescue these claims. The Supreme Court in *Reed* assessed whether a governmental regulation amounted to an impermissible content-based restriction under the Free Speech Clause. *See* 576 U.S. at 163-72. In her case, Plaintiff has only claimed that her Free Speech rights were violated because Defendants chilled her religious expression—she did not allege that Defendants acted pursuant to some content-based governmental regulation.

As Plaintiff's proposed amended complaint lacks factual allegations sufficient to state plausible Free Exercise claims, those claims are futile.

### *Count III: Fourth Amendment—Unreasonable Searches*

Plaintiff claims that Defendants Black, Green, and John Does 5-10 violated Plaintiff's right to privacy under the Fourth Amendment. For Plaintiff to state a plausible Fourth Amendment claim, she must allege factual allegations showing she had "a legitimate expectation of privacy" in the places searched. *See United States v. Rogers*, 97 F.4th 1038, 1041 (6th Cir. 2024) (internal quotations omitted); *United States v. Dillard*, 78 F. App'x 505, 509 (6th Cir. 2003) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). To adequately allege that she had a legitimate expectation of privacy, Plaintiff "must satisfy a two-pronged test." *United States v. Hunyady*, 409 F.3d 297, 301 (6th Cir. 2005). First, Plaintiff "must manifest an actual, subjective expectation of privacy"; and second, "that expectation is one that

20

society is prepared to recognize as legitimate." *Id.* (internal quotations omitted). "The 'factors to be considered in determining whether there was a legitimate expectation of privacy includes ownership, lawful possession, or lawful control of the premises searched.'" *Id.* (quoting *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998)); *see also Rogers*, 97 F.4th at 1042 (quoting *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000)) (referring to factors like the "proprietary or possessory interest in the place to be searched," the "right to exclude others," and legitimate presence on the premises). Furthermore, Plaintiff can only assert her Fourth Amendment rights—she may not vicariously assert the Fourth Amendment rights of others. *Id.* (citing *Rakas*, 439 U.S. at 149).

Start with John Does 5-10. Plaintiff only alleges that Does 5-10 were a part of the September 2024 raid at the Shack. (ECF No. 20-1, PageID.219, ¶ 61 (referring to Does 1-10)). Plaintiff did not have a legitimate expectation of privacy with respect to the Shack when Does 5-10 participated in the September 2024 raid. Plaintiff has not alleged any factual allegations suggesting she has ever owned, lawfully possessed, or ever had legal control over the Shack or the property on which it sits. And while Mr. Pizzimenti may have had a legitimate expectation of privacy at the Shack, Plaintiff cannot assert Mr. Pizzimenti's Fourth Amendment rights as her own. Accordingly, the Fourth Amendment claims against Doe 5-10 are futile.

Plaintiff claims that Defendant Black's and Defendant Green's "warrantless inspection[s]" at the John R. Street property violated her Fourth Amendment rights as well.  For them to have done so, Plaintiff must have had a legitimate expectation of privacy at the John R. Street property.  But she did not have a legitimate expectation of privacy for that premises.  Plaintiff says that the Church (e.g., The Mothership Sanctuary) has been leasing the property since October 9, 2024.  Yet the lease Plaintiff included with her complaint indicates that (1) the lessee was not Plaintiff or the Church—it was Mothership Consulting and Events LLC; and (2) the lease did not begin until November 1, 2024.  (ECF No. 20-2, PageID.260).

"Precedent suggests that tenants under Michigan substantive law acquire their own limited interests in leased real property."  *Waterfront Petroleum Terminal Co. v. Detroit Bulk Storage, Inc.*, 574 F. Supp. 3d 473, 478-79 (E.D. Mich. 2021).  *See also United States v. Ross*, 43 F. App'x 751, 757 (6th Cir. 2002) (indicating that a tenant has an objectively reasonable expectation of privacy while occupancy remains lawful).  As the lease for the John R. Street property reflects, the lessee is Mothership Consulting and Events LLC.  "Although a limited liability company [e.g., a LLC] is not a corporation under Michigan law, it is nonetheless true that the rules regarding corporate form equally appl[y] to limited liability

22

companies."[8] *Salem Springs, LLC v. Salem Twp.*, 880 N.W.2d 793, 801 (Mich. Ct. App. 2015).  An LLC therefore is its own "person" under Michigan law with its own legal rights.  *See Hills & Dales v. Pantig*, 812 N.W.2d 793, 797 (Mich. Ct. App. 2011).  *See also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (explaining the "basic purpose" of incorporation).  And under Michigan law, "[a] member [of a LLC] has no interest in specific limited liability company property."  Mich. Comp. Laws § 450.4504(2).

So if any entity had a legitimate expectation of privacy at the John R. Street property, it was Mothership Consulting and Events LLC, not Plaintiff.  And Plaintiff cannot assert the Fourth Amendment rights of another.  Consequently, Plaintiff cannot state a plausible Fourth Amendment claim against Defendants Black and Green for their respective warrantless inspections.

Furthermore, Mothership Consulting and Events LLC may not have had lawful occupancy thereby depriving it of a legitimate expectation of privacy at the John R. Street property.  Though Plaintiff claims the Church leased the premises in October 2024, the lease itself states that the lease term did not start until November 1, 2024.  Here the document contradicts Plaintiff's allegation, "rendering [it]

---

[8] The proposed amended complaint is light on details related to Mothership Consulting and Events LLC.  The only details regarding that entity come from the wire transfer used to pay the security deposit for the lease at the John R. Street property.  (ECF No. 20-2, PageID.270).  Because that document lists a Michigan address for the LLC, the Court applies Michigan law here.  *See Redmond v. The Jockey Club*, 244 F. App'x 663, 669 (6th Cir. 2007) (explaining that referring to state law is prudent when determining the existence of a property interest).

implausible." *Nolan*, 991 F.3d at 707. Moreover, Madden's October 24, 2024 email states that Mothership Consulting and Events LLC "will not be allowed to occupy the property at 2627 John R." and states that the security deposit will be refunded to Mothership Consulting and Events LLC. (ECF No. 20-2, PageID.274). And ultimately, the lessor, Woodward Building Plaza, served a "Notice to Quit to Recover Possession of Property" for the John R. Street property. Not only does this underscore Plaintiff's lack of a property interest at the John R. Street property, but it also suggests that there was no longer a valid lease thereby rendering any subsequent occupancy unlawful. And one cannot have a legitimate expectation of privacy where occupancy is unlawful. *See Hunyady*, 409 F.3d at 300-03; *Ross*, 43 F. App'x at 757; *McRae*, 156 F.3d at 711.

All in all, Plaintiff's proposed amended complaint fails to state plausible Fourth Amendment claims; thus, those claims are futile.

### Count IV: Fifth Amendment—Takings Clause

Plaintiff claims that "Black and Green's closure" of the Adelaide Street parking lot "constituted a taking without compensation." (ECF No. 20-1, PageID.224). These claims are defective for two reasons.

First, Plaintiff has not alleged that Black and Green closed the Adelaide Street parking lot in the proposed amended complaint. She only alleges that Green surveilled the lot; indeed, in the same paragraph of the proposed amended

complaint, Plaintiff indicates that it was Woodward Building Plaza, Inc. that shared the notice closing parking at the Adelaide Street lot, not Defendant Green. (ECF No. 20-1, PageID.221, ¶ 70 (e.g., Exhibit G)).  As for Defendant Black, Plaintiff has only alleged that he conducted a warrantless search at the John R. Street property on January 15, 2025 and raided the Shack on March 12, 2025.  (*Id.* at ¶¶ 74-75).  There are no factual allegations connecting Black to the Adelaide Street lot.  Plaintiff alleges that John Does 1-2 and Sgt. Barrack took some sort of action toward the Adelaide Street lot, (*id.* at ¶¶ 71, 78), but she did not name these Does or Barrack under her Takings Clause claim.[9]

Second, Plaintiff does not allege facts sufficient to state a claim under the Takings Clause.  "[A] government violates the Takings Clause when it takes property without compensation" thereby permitting "a property owner [to] bring a Fifth Amendment claim under § 1983 at that time."  *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 202 (2019).  It follows that "the plaintiff must 'first demonstrate that [he has] a legally cognizable property interest.'"  *Meth v. Kilpatrick*, No. 08-11589, 2008 WL 4960171, at *4 (E.D. Mich. Nov. 20, 2008) (quoting *McCarthy v. Middle Tennessee Elec. Membership Corp.*, 466 F.3d 399,

---

[9] Plaintiff also cites to Exhibit O in support of this claim, but that Exhibit only includes a "Free Parking" advertisement for "2619 John R., Detroit MI 48201."  (ECF No. 20-3, PageID.2293).  This poster does not list the address for the John R. Street address listed in the lease or the address for the Adelaide Street parking lot.  Plaintiff may have meant to refer to Exhibit N which comprises of parking tickets, but none of those tickets indicate that Black or Green issued them.  (ECF No. 20-2, PageID.286-92).

412 (6th Cir. 2006)).  And "the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law."  *Redmond v. The Jockey Club*, 244 F. App'x 663, 669 (6th Cir. 2007) (internal quotation omitted).  Additionally, there must be a "final decision to take property" before a Takings Clause claim may be raised.  *Harrison v. Montgomery Cnty., Ohio*, 997 F.3d 643, 649 (6th Cir. 2021) (internal quotations omitted); *see also Hensley v. City of Columbus*, 557 F.3d 693, 696 (6th Cir. 2009) (indicating that the "final decision" must come from "the relevant government.").  This means that "it is 'known to a reasonable degree of certainty' what will happen to the property."  *Id.* (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001)).

Plaintiff does not own the Adelaide Street parking lot nor does she have any property interest in that lot.  Plaintiff alleges that the lease provided an "implied license" to use the lot and that one of the lessor's employees gave verbal permission to park there.  (ECF No. 20-1, PageID.220, ¶¶ 68-69.  But "Michigan law is clear that '[a] license grants permission to be on the land of the licensor without granting any permanent interest in the realty.'"  *Rover Pipeline LLC v. 1.23 Acres of Land*, No. 17-10365, 2019 WL 1109944, at *2 (E.D. Mich. Nar. 11, 2019) (quoting *Forge v. Smith*, 580 N.W.2d 876, 883 (Mich. 1998)).  Assuming the lease did confer an implied license, the licensee would be the lessee,

26

Mothership Consulting and Events LLC.  And that license would not confer the sort of legally cognizable property interest needed to raise a Takings Claim.  Nor has Plaintiff alleged that the lot's closure constituted any sort of "final decision" regarding that property.  Plaintiff has provided no authority that suggests parking tickets or the landlord's notice regarding the lot equates to a "final decision to take property."  Rather, Plaintiff has only indicated that Church members could not park at the Adelaide lot and that those who continued to park there received parking tickets.[10]  (ECF No. 20-1, PageID.221, ¶ 71; ECF No. 20-2, PageID.286-92).

Without factual allegations reflecting a property interest in the Adelaide Street lot or a "final decision" regarding that property, Plaintiff cannot state plausible Takings Claims against any Defendant named in the proposed amended complaint.  Thus, Plaintiff's Fifth Amendment claims are also futile.

*Count V: Fourteenth Amendment—Equal Protection Clause*

In total, Plaintiff merely claims that "Defendants targeted Sugarleaf Church . . . while allowing secular businesses, lacking a rational basis."  (ECF No. 20-1, PageID.224, ¶ 112).  Plaintiff fails to state a plausible Equal Protection claim.

_____

[10] As an aside, Plaintiff alleges that John Does 1-2 "falsely claimed City ownership" of the Adelaide Street lot when they issued parking tickets.  (ECF No. 20-1, PageID.221, ¶ 71). The tickets themselves are difficult to read.  But as far as the Court can discern, the reasons for some tickets are "parking in private lot" and "not zoned for parking."  (ECF No. 20-2, PageID.286-92).  They do not, however, implicate the City's ownership of the Adelaide Street lot.

The Court explained in a prior Order the elements of an Equal Protection claim. (ECF No. 19, PageID.203-05). As detailed there, the Sixth Circuit has instructed that:

> The Equal Protection Clause prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. CONST. Am. XIV, § 1. The Clause embodies the principle that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights. The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers.

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To bring a selective enforcement claim, "it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside her category were not prosecuted." *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997).

Plaintiff has not pleaded factual allegations showing any Defendant named in the proposed amended complaint treated Plaintiff differently than someone similarly situated to her. In support of her Equal Protection claims, Plaintiff directs the Court to Exhibits C, E, and F. But these exhibits do not evince any form of disparate treatment.

Exhibit C contains articles wherein Plaintiff suggests that "the city's [e.g., Detroit's] actions" against Mr. Pizzimenti and the Shack amounted to "selective enforcement" as such actions do not address "real and pervasive issue like the nearby crack houses and crime."  (ECF No. 20-2, PageID.251, PageID.257). Plaintiff also states that these articles report on the "raids on Psychedelic Healing Shack, Spores Hazel Park, Soul Tribes, [and] the Mush Room."  (ECF No. 20-1, PageID.229, ¶ 184).  But apart from the Shack, these articles only refer to raids on Soul Tribes International Ministries in September 2023.  (ECF No. 20-2, PageID.251, PageID.257).  It is Plaintiff herself who alleges that Spores Hazel Park and The Mush Room were raided between November 2024 and March 2025. (ECF No. 20-1, PageID.222).  Important here, neither article points to any similarly situated secular person or business.  Exhibit E consists solely of the email from Defendant Madden informing Plaintiff that Mothership Consulting and Events LLC cannot occupy the John R. Street property.  (ECF No. 20-2, PageID.274).  Needless to say, this document does not identify any similarly situated secular entity.  And Exhibit F is an affidavit from Plaintiff explaining that she moved to amend her complaint in good faith—she does not, however, name a similarly situated secular entity.  (*Id.* at PageID.275).

None of the factual allegations in the proposed amended complaint or the cited exhibits create a basis from which the Court can reasonably infer that

religious or secular entities that sell or otherwise provide psilocybin mushrooms or other entheogenic substances are treated different under the law.  Plaintiff has only conclusory alleged that other "ministries" that use entheogenic substances are treated the same and that it is that treatment that is unlawful.  Plaintiff has not pointed to any secular entity that sells or otherwise distributes entheogenic substances, let alone one that has faced different treatment on the basis of religion. Having failed to make the threshold showing of disparate treatment, Plaintiff fails to state plausible Equal Protection claims.

*Count VI: Fourteenth Amendment—Substantive Due Process*

Plaintiff only claims that "Defendants' actions ARE conscious-shocking." (ECF No. 20-1, PageID.255).  "To prove a § 1983 substantive due process claim, the plaintiff[ ] would need to establish either (1) 'deprivations of a particular constitutional guarantee,' or (2) government actions that 'shock the conscience.'" *Garner v. Harrod*, 656 F. App'x 755, 761 (6th Cir. 2016) (quoting *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011)). "[T]he 'shocks the conscience' standard sets a high bar: 'Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012)).  By simply describing Defendants' actions as "conscience-shocking"

30

without nothing more, Plaintiff only offers the sort of rote, formulaic recitation that cannot survive a 12(b)(6) motion to dismiss.  *See Twombly*, 550 U.S. at 555.

### *Count XI: Civil Rights Conspiracy (42 U.S.C. § 1985(3))*

Plaintiff claims that Defendants "Mallet, Madden, Black, Green, and Barrack conspired to deprive equal protection."  (ECF No. 20-1, PageID.226, ¶ 136).  "'Section 1985(3) creates a cause of action for a conspiracy between two or more persons to deprive another of the equal protection of the laws.'"  *Bartlett v. Washington*, 739 F. App'x 403, 408 (6th Cir. 2019) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019)).  But "if there is no underlying constitutional violation, there can be no claim for conspiracy."  *Id.* (citing *Sticker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013)).  Since Plaintiff has failed to adequately plead plausible constitutional violations, her conspiracy claim also fails.

### *Count XVIII: Municipal Liability (42 U.S.C. § 1983)*

Under this claim, Plaintiff only alleges that "The City of Detroit's policies or failure to train caused violations."  (ECF No. 20-1, PageID.227, ¶ 164).  This claim also fails to pass scrutiny under Rule 12(b)(6).  As the Sixth Circuit has explained it:

> To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's constitutional rights. *Powers v. Hamilton*

*Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing *Monell*[ *v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)]). "A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citations omitted). "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into conduct.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

*Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573 (6th Cir. 2016).

Plaintiff has only referred to the elements of municipal liability by conclusory alleging that Detroit's policies or some separate failure to train caused "violations." For the City of Detroit to be liable as a municipality, there must be an underlying constitutional violation. And again, Plaintiff has not sufficiently pleaded factual allegations evincing any of the claimed constitutional infractions. Even if she had, Plaintiff also has not pleaded factual allegations reflecting any sort of deliberate indifference. So Plaintiff's municipal liability claim is also futile.

### Count VII: RLUIPA (42 U.S.C. § 2000cc)

Here Plaintiff claims that "Defendants' closures (Exhibits G, O), Madden's threats (Exhibit E), and raids (Exhibit C) burdened religious exercise without a compelling interest." (ECF No. 20-1, PageID.225, ¶ 120). By referring to closures

with a reference to Exhibits G and O, the undersigned understands this claim to refer to Defendants Black and Green and the alleged closure of the Adelaide Street parking lot since this claim mirrors Plaintiff's Fifth Amendment claim.[11]  (ECF No. 20-1, PageID.224, ¶ 108 ("Black and Green's parking lot closure (Exhibits G, O) constituted a taking without compensation.")).

For Plaintiff to state a valid claim under RLUIPA, she "must have a 'property interest in the regulated land.'"  *Gerber v. Herskovitz*, 14 F.4th 500, 510 (6th Cir. 2021) (quoting 42 U.S.C. § 2000cc-5(5)).  "A plaintiff under RLUIPA fails to state a claim when he does not have a legally recognized property interest in the property at issue."  *Id.* (citing *Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007)).  As explained earlier, Plaintiff did not have a property interest in the Adelaide Street parking lot.  At most, the lease conferred an implied license to use the lot to Mothership Consulting and Events LLC and that license did not grant a property interest in the lot under Michigan law.

Plaintiff also claims that Madden's email regarding the John R. Street property violated RLUIPA.  But as pointed out above, Plaintiff has not adequately pleaded that she had a property interest at the John R. Street property.  The lease did not start until November 2024, and Madden informed the lessee on October 24,

---

[11] Plaintiff's Americans with Disabilities Act claim also refers to "Parking closures" and cites to "(Exhibits G, O)" in support of that claim.  (ECF No. 20-1, PageID.225, ¶ 124).

2024—before the lease began—that it could not occupy the John R. Street property and that the security deposit would be refunded. Yes, Madden's email indicated that a future rental would be possible if the lessee "acquire[d] permission form [sic] the City with proper licensing," but Plaintiff has not indicated that the lessee did so. As the lease was apparently cancelled before its term began and lessee could not take occupancy of the John R. Street property, Plaintiff has not pleaded sufficient factual allegations from which the Court can reasonably infer Plaintiff's own property interest in the John R. Street property.

Moreover, RLUIPA states that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person." 42 U.S.C. § 2000cc(a)(1). The definition of "government" under the statute "include[es] States and their agencies and departments, as well as persons acting under color of state law." *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009) (citing 42 U.S.C. § 2000cc-5(4)(A)). *See also* 42 U.S.C. § 2000cc-5(4)(B). As detailed above, Defendant Madden sent her email in her capacity as a private attorney and not an individual acting under color of state law. So Plaintiff's RLUIPA claim against Madden fails for this reason as well.

As far as any raids that may have violated Plaintiff's rights under RLUIPA, Plaintiff directs the Court's attention to Exhibit C. The articles in that exhibit refer to raids at the Shack and Soul Tribes International Ministries. Plaintiff has not

alleged that she had or has a property interest in those properties.  And without a

property interest, Plaintiff cannot state a plausible claim under RLUIPA for raids at

those properties.

*Count VIII: Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 et seq.)*

Plaintiff only claims that "Parking Closures (Exhibits G, O) denied disabled

members (Plaintiff is a disabled person) access."  (ECF No. 20-1, PageID.225, ¶

124).  The undersigned reads this claim to be directed at Defendant Black and

Green as it mirrors Plaintiff's Fifth Amendment claim.

To begin, Plaintiff has not specified which provision of the ADA Defendants

Black and Green supposedly violated.  As best the Court can tell, Plaintiff raises a

claim under Title II considering her citation to *Tennessee v. Lane*, 541 U.S. 509,

513 (2004) (assessing Title II of the ADA and whether it "exceeded Congress'

power under § 5 of the Fourteenth Amendment")).  Title II of the ADA "provides

that 'no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs

or activities of a public entity, or be subjected to discrimination by such entity.'"

*Knox Cnty., Tennessee v. M.Q.*, 62 F.4th 978, 999 (6th Cir. 2023) (quoting 42

U.S.C. § 12132)).  To state a claim under Title II, Plaintiff must plead and prove

that

> (1) The plaintiff is a "handicapped person" under the [law]; (2) The
> Plaintiff is "otherwise qualified" for participation in the program; (3)

35

> The Plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Id.* at 1000 (quoting *G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013)).  *See also Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (internal citation omitted).  Plaintiff must also "show that the defendants intentionally discriminated against h[er] *because of* [her] disability."  *Smith v. City of Troy*, 874 F.3d 938, 947 (6th Cir. 2017) (citing *Thompson v. Williamson*, 219 F.3d 555, 558 (6th Cir. 2000)).

Plaintiff has failed to adequately plead the prima facie elements of her ADA claims.  Plaintiff has not pointed to any such public program under which she was denied benefits or subjected to discrimination.  Additionally, the proposed amended complaint lacks allegations regarding "Federal financial assistance."  And as explained above, Plaintiff has not alleged in her proposed amended complaint that Black and Green closed the Adelaide Street parking lot.  The proposed amended complaint does not connect Black to the Adelaide Street lot in any way and only alleges that Green surveilled the lot.  At any rate, Plaintiff has not pleaded factual allegations showing that Black and Green even knew of Plaintiff's disability, let alone that they acted with discriminatory intent because of that disability.  Plaintiff therefore fails to state a claim under Title II of the ADA. The ADA claims are thus futile.

*Count IX: Fair Housing Act (FHA) (42 U.S.C. § 3604)*

Plaintiff claims that Madden's email and Black and Green's closure of the Adelaide Street parking lot amounted to discrimination on the basis of religion and disability thereby violating the Fair Housing Act. Considering Plaintiff's citation to *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009), she apparently brings claims under 42 U.S.C. § 3604(a)-(b). *See Bloch*, 587 F.3d at 774 (referring to § 3604(a)-(b)). "The FHA prohibits refusing to sell or rent housing to a person or discriminating against a person in relation to the provision of housing services or facilities on the basis of 'race, color, religion, sex, familial status, or national origin.'" *Brown v. Dominion Mgmt. Servs., LLC*, No. 1:23-cv-10, 2023 WL 5608861, at *1 (6th Cir. June 30, 2023) (quoting 42 U.S.C. § 3604(a)-(b)). Discrimination on the basis of disability is also prohibited under the FHA. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 360 (6th Cir. 2015) (citing 42 U.S.C. § 3604(f)(2)). "To state a claim under the FHA, a plaintiff must allege, at a minimum, sufficient facts to support an inference that the defendant discriminated against her on the basis of one of those protected classes." *Brown*, 2023 WL 5608861, at *1.

Plaintiff has only conclusory alleged discrimination on the basis of disability and religion. She has alleged no facts indicating Madden, Black, or Green discriminated against her because of these protected classes. Madden's email

makes no mention of Plaintiff's disability in her email.  Though Madden identified the "commercial sale and possible cultivation of hallucinogens for religious purposes," Plaintiff's religion was not the rationale for her actions.  (ECF No. 20-2, PageID.274).  Madden's email was rooted in her concern for "possible civil and criminal charges" directed at her client, not Plaintiff's religion.  There are also no well-pleaded factual allegations detailing how Black and Green violated Plaintiff's rights because of her religion or her disability.  Nothing in the proposed amended complaint indicates that either Black or Green was aware of Plaintiff's disability or her religion or that animus toward Plaintiff's disability and religion motivated their actions.  Plaintiff has only conclusory alleged that Madden, Black, and Green acted unlawfully and from there reasons that the unlawful conduct must have been discriminatory.  This is not enough to survive scrutiny under Rule 12(b)(6).  *See id.*

### Count X: FHA Retaliation (42 U.S.C. § 3617)

Here Plaintiff claims that Madden's email and Black's "warrantless inspection" constituted unlawful retaliation against Plaintiff "for asserting her rights."  (ECF No. 20-1, PageID.226).  "To state a claim under § 3617, the plaintiff must allege facts showing "'(1) that he exercised or enjoyed a right guaranteed by [42 U.S.C.] §§ 3603-3606; (2) that the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection between his exercise or enjoyment of a right and the defendant's conduct.'"  *Harris v.*

*Cooley*, No. 19-4029, 2020 U.S. App. LEXIS 16735, at *7 (6th Cir. May 26, 2020) (quoting *Hood v. Midwest Sav. Bank,* 95 F. App'x 768, 779 (6th Cir. 2004)). Plaintiff must also "allege facts showing that the defendant acted with 'discriminatory animus.'" *Id.* (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012)).

Here too Plaintiff fails to state a claim. Plaintiff has not specified a right identified under 42 U.S.C. §§ 3603-3603 in her proposed amended complaint. While the Court must review Plaintiff's proposed pleadings liberally, it cannot construct them for her. The Court will not ferret through those provisions to determine which might fit Plaintiff's claims here. Plaintiff has also failed to allege that Madden and Black acted with discriminatory animus. Once more, Plaintiff cites Madden's email in support of this claim. But there, Madden explained that the lessee could not take occupancy because she would not subject her client to the possibility of civil or criminal liability. (ECF No. 20-2, PageID.274). The Court cannot reasonably infer discriminatory animus on this basis. And with respect to Black, Plaintiff has only alleged that he conducted a warrantless inspection at the John R. Street property and at the Shack. (ECF No. 20-1, PageID.221, ¶¶ 74-75). Without more, the Court cannot infer discriminatory animus on the part of Defendant Black.

Since Plaintiff fails to state plausible claims for retaliation under the FHA, her § 3617 claims are futile.

### Count XII: Civil RICO (18 U.S.C. § 1962(c)-(d))

Plaintiff claims that Mallet's statement, Madden's email, Black "threats," and Green's "closures" all comprise "racketeering via predicate acts" thereby resulting in a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim.  For Plaintiff to state a claim under 18 U.S.C. § 1962(c), "the plaintiff must plead facts that would plausibly demonstrate '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)).  "The 'pattern of racketeering activity' element requires 'at least two predicate acts of racketeering activity occurring within a ten-year period[,] . . . consist[ing] of offenses [that] are indictable under any number of federal statutes, including the mail and wire fraud statutes.'" *Id.* (quoting *Moon*, 465 F.3d at 723)).  And in multi-defendant § 1962(c) claims, "a plaintiff must allege that *each defendant* individually committed at least two predicate acts." *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 605 (E.D. Mich. 2015) (citing *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011)).  Moreover, to withstand scrutiny under Rule 12(b)(6), Plaintiff must plausibly allege that Defendants committed such predicate acts. *See Rives v. Univ. of Tennessee*, No.

40

24-5336, 2024 WL 5103829, at *5 (6th Cir. Dec. 13, 2024) (citing *Riverview*

*Health Inst. LLC v. Med.. Mut. Of Ohio*, 601 F.3d 505, 513 (6th Cir. 2010)).

Armed with this understanding, Plaintiff fails to plead a plausible civil RICO

claim.  Plaintiff has only alleged that Mallet's statement comprised mail fraud, that

Madden's email constituted wire fraud, and that Black's threats amounted to

extortion.[12]  (ECF No. 20-1, PageID.226, ¶ 140).  Though Plaintiff also refers to

Green's "closure" of the Adelaide Street parking lot, she did not cite an indictable

offense.  That said, Plaintiff has not alleged that each Defendant committed two

predicate acts as required for a multi-defendant civil RICO claim.  *See Kerrigan*,

112 F. Supp. 3d at 605.  More importantly, Plaintiff has not plausibly alleged that

Defendants committed those predicate facts.  Merely citing federal crimes without

providing factual allegations explaining how Defendants' actions comprised such

unlawful conduct is not enough for a plausible RICO claim.  Otherwise, the

requirement that pleadings be more than mere labels and conclusions to state

plausible claims would be rendered meaningless.  *See Twombly*, 550 U.S. at 555.

Plaintiff's reply brief is unhelpful in this regard as well.  She first refers to a

"forthcoming affidavit" in an entirely different case and concludes that the conduct

---

[12] It is unclear what Black's "threats" refer to.  As has been pointed out, Black is only alleged to have performed a warrantless inspection and a raid at the Shack.  If such acts amounted to a "threat" of some sort, Plaintiff has not clearly alleged that in her proposed amended complaint.

referenced therein reflects defamation, fraudulent warrants, and extortion that forms a "RICO pattern to suppress religious cannabis use."  (ECF No. 23, PageID.353-54).  But the civil RICO claim in Plaintiff's proposed amended complaint does not refer to defamation or fraudulent warrants.  While it does refer to Black's alleged extortion, this passage in the reply brief does not explain how Black's conduct constituted extortion.  Plaintiff then claims that defamation, fraudulent warrants, extortionate fines and code violations, retaliatory enforcement, and unlawful raids constitutes a RICO violation under 18 U.S.C. § 1961(5).  (ECF No. 23, PageID.356-57).  Yet nothing here expands on how factual allegations in the proposed amended complaint can lead the Court to reasonably infer that Defendants committed the predicate acts named in the proposed pleadings.  And in any event, "[a] reply brief is a response to argument made in the response brief, it does not provide the moving party with a new opportunity to present yet another issue of the court's consideration."  *Allen v. Hardrock HDD, Inc.*, No. 16-13869, 2018 WL 2363924, at *6 (E.D. Mich. May 24, 2018) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).  To the extent that Plaintiff tries to expand her civil RICO claim beyond alleged mail fraud, wire fraud, and extortion—and raise a new cause of action under § 1961(5)—she cannot do so in her reply brief.

42

In all, Plaintiff has only conclusory alleged that Defendants committed the

purported predicate acts.  As a result, Plaintiff has failed to plausibly allege a

pattern of racketeering.  She therefore fails to state a civil RICO claim under §

1962(c).

Since Plaintiff has failed to adequately plead the elements of her civil RICO

claim under § 1962(c), she also fails to plead a plausible conspiracy claim under §

1962(d).  "To state a claim for RICO conspiracy, one must 'successfully allege all

the elements of a RICO violation, as well as . . .the existence of an illicit agreement

to violate the substantive RICO provision.'"  *Grubbs v. Sheakley Grp., Inc.*, 807

F.3d 785, 805-06 (6th Cir. 2015) (quoting *Heinrich v. Waiting Angels Adoption*

*Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012)) (internal quotations omitted).

Plaintiff did not successfully allege the pattern of racketeering element of her civil

RICO claim; therefore, she cannot state a claim for a RICO conspiracy.

*Counts XIII-XVII and XIX: State-Law Claims*

The remaining claims in Plaintiff's proposed amended complaint are all

predicated on violations of Michigan state law.  To this point the Court has

concluded that Plaintiff's federal law claims are futile because they lack facial

merit.

Defendant Mallet removed the case to this Court because it could exercise

original federal question jurisdiction.  (ECF No. 1, PageID.2 (citing to 28 U.S.C. §

1331)).  Accordingly, for the Court to exercise jurisdiction over state-law claims in either the original complaint or the proposed amended complaint, it must have supplemental jurisdiction to do so.  *See* 28 U.S.C. § 1367.  Plaintiff agrees as she alludes to the Court's supplemental jurisdiction over her state-law claims in her proposed amended complaint.  (ECF No. 20-1, PageID.217, ¶ 46).  Supplemental jurisdiction, however, is not mandatory.  The Court can decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

It follows that the Court need not exercise supplemental jurisdiction over state-law claims in a proposed amended complaint.  *See Mulcahey v. Chocolay Twp.*, No. 2:24-cv-7, 2024 WL 4604055, at *2 (W.D. Mich. Oct. 29, 2024) (declining supplemental jurisdiction over state-law claims in a proposed amended complaint); *Crawford v. IC Sys.*, No. 17-230, 2018 WL 8489601, at *10 (E.D. Ky. Oct. 29, 2018) (determining that the Court should decline to exercise supplemental jurisdiction over proposed state-law claims when all the proposed federal claims would be futile), *report and recommendation adopted*, 2019 WL 2372887 (E.D. Ky. Feb. 14, 2019); *Crump v. Passaic Cnty.*, 147 F. Supp. 3d 249, 254 (D.N.J. 2015) (citing *Saunders v. Bright*, 281 F. App'x 83, 85 (3d Cir. 2008) ("Where state law claims are before a court based on supplemental jurisdiction, denial of leave to amend is appropriate where all amended federal claims would be futile and where

the court would decline to exercise supplemental jurisdiction under § 1367(c)(3) over the state claims.").

Since all the federal law claims in the proposed amended complaint are futile, the Court declines to exercise supplemental jurisdiction over the proposed state-law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Crawford*, 2018 WL 8489601, at *10; *Crump*, 147 F. Supp. 3d at 254. *See also Sharwell v. Selva*, 4 App'x 226, 227 (6th Cir. 2001) ("Where a district court has jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits.").

### Miscellaneous Matters

The Court offers a few concluding notes on some miscellaneous matters. Plaintiff argues in her reply brief that "[t]he City's failure to address claims against Black, Green, Barrack, Woodward Building Plaza, and Does 1-500 constitutes waiver." (ECF No. 23, PageID.345). Plaintiff is mistaken. First, the City of Detroit did not submit a response to Plaintiff's motion because the City of Detroit is not yet a formal Defendant and has not been served process. To the extent that she refers to Mallet's response brief, Plaintiff is still incorrect. Mallet's brief argues that the proposed amended complaint fails to state a claim against himself and Madden and fails to allege any cause of action related to warrantless

inspections and parking at the Adelaide Street lot.  (ECF No. 22, PageID.333-36).
In other words, Mallet argued that Plaintiff failed to state plausible claims for relief
based on the entirety of the conduct alleged in the proposed amended complaint
regardless of any specific Defendant.  (*Id.* at PageID.336 ("Plaintiff's proposed
amended complaint is merely labels, conclusions and formulaic recitations of
various causes of action, and would be subject to dismissal.").  There was no
supposed waiver.

Plaintiff's reply brief also raises several claims that do not appear in the
proposed amended complaint.  New claims cannot be raised in a reply brief.  *Allen*,
2018 WL 2363924, at *6.  Plaintiff asserts that Defendant Sgt. Barrack violated the
Religious Freedom Restoration Act ("RFRA"), the First Amendment, RLUIPA,
and 18 U.S.C. §§ 241-242.  (ECF No. 23, PageID.348).  But Plaintiff did not
include a RFRA claim as a cause of action in the proposed amended complaint;
and if she had, the Court has explained elsewhere why that claim would fail if
lodged against local government actors.  (ECF No. 19, PageID.201).[13]  Nor did
Plaintiff cite to 18 U.S.C. §§ 241-242 in the proposed amended complaint.
Plaintiff did not name Barrack under her First Amendment or RLIUIPA claims

_____

[13] There, the Court also explained why *Jensen v. Utah Cnty.*, No. 2:24-cv-00887, 2025
WL 582812 (D. Utah Feb. 20, 2025) is inapt.  "That ruling relied on Utah's state-level RFRA,
which is inapplicable in this case.  Michigan has not enacted a RFRA statute."  (ECF No. 19,
PageID.201).

either.  Plaintiff suggests that the City of Detroit violated the First and Fourteenth Amendments, RFRA, and RLUIPA.  (ECF No. 23, PageID.349).  Plaintiff did not name the City of Detroit under her First Amendment and RLUIPA claims in the proposed amended complaint.  Though Plaintiff just refers broadly to "Defendants" under her Fourteenth Amendment claims, she did not successfully plead those claims with respect to any Defendant.

Plaintiff also states that Defendant Green's conduct violated "Section 504 of the Rehabilitation Act (29 U.S.C. § 794)."  (ECF No. 23, PageID.351).  Plaintiff did not include a Rehabilitation Act claim in the proposed amended complaint. That said, claims under the ADA and Section 504 have the same elements.  *Knox Cnty.*, 62 F.4th at 1000.  Since Plaintiff failed to state her ADA claim, any Section 504 claim would also be deficient.

The Sherman Antitrust Act, Lanham Act, and Health Insurance Portability and Accountability ("HIPPA") Act claims (and the related Fourth Amendment claim) referenced in the reply brief are not in the proposed amended complaint either.  The Court need not address these claims and others raised for the first time in the reply brief.

## III.  CONCLUSION

The federal law claims in Plaintiff proposed amended complaint are futile, and the Court declines to exercise supplemental jurisdiction over the remaining

proposed state-law claims. Plaintiff's motion to amend is therefore **DENIED**.

Furthermore, in light of the undersigned's Report and Recommendation to grant

Mallet's motion to dismiss and to dismiss John Does 1-500, Plaintiff's pending

motion for appointed counsel, (ECF No. 24), is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are

required to file any objections within 14 days of service as provided for in Federal

Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as

error any defect in this Order to which timely objection was not made. Fed. R.

Civ. P. 72(a). Any objections are required to specify the part of the Order to which

the party objects and state the basis of the objection. When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich.

Local Rule 72.2.


Date: June 9, 2025          <u>s/Curtis Ivy, Jr.</u>
                                           Curtis Ivy, Jr.
                                           United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on June 9, 2025.

48

<u>s/Sara Krause</u>
Case Manager
(810) 341-7850